UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **SUSAN SOLTERO-LEON**, an individual, | CIVIL ACTION |
| Plaintiffs, | |
| v. | Case No. 2:23-cv-372 |
| **GEM REMOTES HOLDINGS, INC.**, a Florida corporation, and **RICHARD SHANAHAN**, an individual, | Judge: |
| | Mag. Judge: |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **SUSAN SOLTERO-LEON** ("**SOLTERO-LEON**"), by and through undersigned counsel, and state the following for her Complaint:

### CAUSES OF ACTION

1. This is an action brought under the federal Fair Labor Standards Act ("FLSA"), False Claims Act ("FCA") and Florida's Private Whistleblower Act (FWA) for (1) unpaid overtime wages, (2) retaliation in violation of the FCA, and (3) retaliation in violation of the FWA.

### PARTIES

2. The Plaintiff, **SUSAN SOLTERO-LEON** ("**SOLTERO-LEON**") is an individual and a resident of Florida who at all material times resided in Collier County, Florida and worked for the Defendant in Collier County, Florida. At all

1

material times, **SOLTERO-LEON** was employed by the Defendant in an administrative role performing services such as bookkeeping, sales and customer service. A great number of the customers **SOLTERO-LEON** served were residents of other states who visit Southwest Florida on only a seasonal basis or on vacation. **SOLTERO-LEON** began the flow of interstate commerce for by, *inter alia*, generating and processing billing, which collected funds from out-of-state sources, and handling products imported from outside the United States, including China. **SOLTERO-LEON** performed work in Collier County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **SOLTERO-LEON** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

3. Defendant, **GEM REMOTES HOLDINGS, INC.** ("**GEM REMOTES**") is a Florida company and employed **SOLTERO-LEON** in Lee County, Florida. **GEM REMOTES** describes itself as "a pioneer and leader in the field of wireless boat lift control systems." **GEM REMOTES** imports the bulk of its products from China, and then re-sells those products, installs them, and services them. **GEM REMOTES** has gross annual income well in excess of $500,000.00 per year and is engaged in interstate commerce; it is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **GEM REMOTES'** employees are engaged in interstate commerce and their business model specifically involves interstate purchases and sending/receiving funds from out-of-state sources. **GEM REMOTES** imports products from China, and collects

monies from out-of-state financial institutions. **GEM REMOTES** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **SOLTERO-LEON**. **GEM REMOTES** supervised and controlled **SOLTERO-LEON**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **SOLTERO-LEON**. **GEM REMOTES** maintains employment records of **SOLTERO-LEON**. **GEM REMOTES** employs in excess of 10 employees and was the employer of **SOLTERO-LEON** under the FLSA, FCA and FWA.

4. Defendant **RICHARD SHANAHAN** ("**SHANAHAN**") is an individual and resident of Collier County, Florida. **SHANAHAN** is the president of **GEM REMOTES** and was the supervisor of **SOLTERO-LEON**. **SHANAHAN** supervised and controlled **SOLTERO-LEON**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **SOLTERO-LEON**.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act (FLSA") 29 U.S.C. §§216(b) and 217. The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the FLSA.

6. This Court has supplemental jurisdiction over **SOLTERO-LEON**'s state law claims under 28 U.S.C. §1367.

7. Venue is proper in the United States District Court for the Middle District of Florida because **SOLTERO-LEON** worked in, and the Defendants

conduct business in, and some or all of the events giving rise to **SOLTERO-LEON**'s claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since the action accrued in Collier County, which is within the Fort Myers Division.

## GENERAL ALLEGATIONS

8. **SOLTERO-LEON** began her employment with the Defendant in March 2017.

**FLSA Allegations**

9. **SOLTERO-LEON** was paid an hourly wage of $25.00 per hour.

10. **SOLTERO-LEON** was employed until January 3, 2023.

11. In the past 3-years, **SOLTERO-LEON** was required by the Defendants to work ninety (90) hours of overtime without proper overtime compensation.

12. The Defendants' failure to pay compensation to **SOLTERO-LEON** at a rate of one and one-half (1 and 1/2) times **SOLTERO-LEON**'s regular rate of pay violates the FLSA.

13. The Defendants did not pay **SOLTERO-LEON** proper overtime, and she is owed at least $3,375.00.

14. The Defendant has violated the FLSA by failing to pay overtime wages to **SOLTERO-LEON**.

**FCA and FWA Allegations**

15. During **SOLTERO-LEON**'s employment with **GEM REMOTES**, she observed and objected to a multitude of violations of federal and state law perpetrated by **SHANAHAN**.

16. When companies bring goods into the United States to sell them, they frequently have to pay a tax or tariff called a customs or import duty. Our customs system relies on importers, like the Defendants, to accurately report the type, value, and country of origin for the merchandise they bring into the United States and paying the right import duties. Customs duties and tariffs are set as a percentage of the imported products value. When an importer fraudulently claims too low a value of the import, he illegally reduces the import duty owed.

17. Unscrupulous importers, like the Defendants, engage in such a scheme to cheat the United States and gain an unfair advantage over their competitors. The purpose of duties and tariffs is to protect the United States' domestic companies from unfair foreign competition. For this reason, most customs duties and tariffs are designed to stop foreign companies from selling goods in the United States below cost and harming domestic competition.

18. The United States employs a very complicated procedure for setting and enforcing customs duties. The Department of Commerce sets the duty rates, but Customs & Border Patrol (CBP) collects and enforces duties. This is primarily an honor system. Importers tell CBP the classification and value of the goods they are importing, and CBP independently verifies only a small percentage of imports.

19. **SHANAHAN** knows this and developed a scheme whereby he illegally avoids paying high import tariffs for the products he imports from China by having the Chinese company he orders from create a false invoice that dramatically undervalues the amount paid by **GEM REMOTES**. This false invoice is included in the physical shipment so that when the shipment arrives in the United States, the tariffs applied are based on the intentionally undervalued amounts stated on the fraudulent invoice, when in reality the amount paid by **GEM REMOTES** was sometimes four or more times higher.

20. For example, in September 2022, **GEM REMOTES** (through **SHANAHAN**) placed Order #22-071493 from Taichangfeng Technology and paid that Chinese company $7,200.00. However, when the shipment was received, the "commercial invoice" included with the shipment falsely indicated the price to be a mere $800.00. By way of further example, in October 2022, **GEM REMOTES** (through **SHANAHAN**) placed Order #22-091527 from Taichangfeng Technology and paid that Chinese company $37,310.00. However, when the shipment was received, the "commercial invoice" included with the shipment falsely indicated the price to be a mere $14,016.00. Another October 2022 order was much the same. **GEM REMOTES** (through **SHANAHAN**) placed Order #22-091518 from Taichangfeng Technology and paid that Chinese company $4,950.00. However, when the shipment was received, the "commercial invoice" included with the shipment falsely indicated the price to be a mere $1,000.00.

21. This scheme perpetrated by **SHANAHAN** on behalf of **GEM REMOTES** is very similar to a criminal case brought by the Department of Justice

(DOJ) against the CEO of Stargate, a children's apparel business in New York. There, the DOJ also intervened in the whistleblower's False Claims Act case against the business itself. In that case, the CEO devised a scheme whereby the Chinese exporter would provide one invoice that reflected the amount the U.S. company actually paid the Chinese exporter for the goods, and a second invoice that fraudulently reflected a fabricated lower amount that was submitted to CBP. These two invoices were virtually identical (e.g., same invoice number, description of goods, quantity of goods), except that they included different prices for the same shipments of goods.[1] This is nearly identical to what **SHANAHAN** and **GEM REMOTES** have been doing for years.

22. By this undervaluation scheme, **SHANAHAN** and **GEM REMOTES** committed – and continue to commit – multiple violations of FCA by defrauding the United States of duties and tariffs it is lawfully owed, which are the commission of reverse false claims in violation of the FCA. The undervaluation scheme is also carried out, *inter alia*, through the Defendants' violation of 18 U.S.C. §1343 (wire fraud).

23. **SOLTERO-LEON** repeatedly objected to **SHANAHAN**'s illegal scheme he was operating on behalf of **GEM REMOTES**, and she made clear to **SHANAHAN** that she would not participate in it any longer in December 2022. She also disclosed to **SHANAHAN** that she would not participate in his scheme to hire and exploit undocumented workers, who he was employing illegally and

---

[1] The result of that case was a civil settlement of $2,800,000, a 6-month prison sentence for the CEO, and criminal forfeiture of $1,661,617, following the CEO's guilty plea.

refusing to pay them overtime wages while threatening to terminate them or turn them into U.S. Immigration & Naturalization Services.

24. **SHANAHAN** then erupted in anger, berating **SOLTERO-LEON** and even physically battering her when she stated that she would be disclosing his illegal activities to the proper authorities.

25. As a result of this and after being asked again to engage in such illegal conduct, **SOLTERO-LEON** resigned her employment with **GEM REMOTES**, as would any reasonable employee who was forced to endure physical batteries at the hands of her employer.

## COUNT I: VIOLATION OF THE FLSA- UNPAID OVERTIME
## (GEM REMOTES and SHANAHAN)[2]

26. The Plaintiff hereby incorporates Paragraphs 1-14 in this Count as though fully set forth herein.

27. Plaintiff was actually covered, non-exempt employee under the FLSA at all times during her employment with the Defendants.

28. The Defendants were required by the FLSA to pay Plaintiff at least time and one-half for all hours worked by them in excess of 40 hours per week.

29. The Defendants had operational control over all aspects of Plaintiff's day-to-day functions during her employment, including compensation.

30. The Defendants were Plaintiff's employer and are liable for violations of the FLSA in this case.

---

[2] This Count is brought against both Gem Remotes and Shanahan.

31. The Defendants violated the FLSA by failing to pay Plaintiff at least time and one-half for all hours worked over 40 per week.

32. The Defendants have willfully violated the FLSA in refusing to pay Plaintiff's proper overtime for all hours worked over 40 per week.

33. As a result of the foregoing, Plaintiff has suffered damages of lost wages.

34. The Defendants are the proximate cause of Plaintiff's damages.

**WHEREFORE,** the Plaintiff prays that this Honorable Court enter a Judgment in her favor and against the Defendant for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

### COUNT II – VIOLATION OF VIOLATION OF 31 U.S.C. § 3730(h): RETALIATION[3]

35. Plaintiff incorporates by reference Paragraphs 11-3, 5, 7-8 and 15-25 of this Complaint as though fully set forth below.

36. The Plaintiff, an employee, believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that Defendant was committing a fraud upon federal government agencies and other private entities.

37. Defendant – through the CEO – was aware of Plaintiff's objections to the Defendant's illegal conduct.

---

[3] This Count is brought against Gem Remotes only.

38. Immediately thereafter, Plaintiff began to receive a hostile work environment, and adverse employment action.

39. Immediately after objecting to Defendant's misdeeds, Plaintiff began to be subjected to retaliation.

40. Pursuant to 31 U.S.C. § 3730(h) of the False Claims Act (hereinafter "FCA"), any employee who is discharged, demoted, suspended, threatened, harassed and otherwise discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done under the FCA is entitled to all relief necessary to make the employee whole.

41. The purpose of the FCA, as explained in the Senate report accompanying the 1986 amendments to the FCA, states that Congress added a retaliation provision to the FCA "to halt companies… from using the threat of economic retaliation to silence 'whistleblowers'" and to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34 (1986), U.S. Code Cong. & Admin News 1986, at 5266, 5299.

42. Defendant began its negative employment actions against Plaintiff and ultimately did discharge him from his position for reasons contrary to public policy, as set out in 31 U.S.C. § 3730(h) and without just cause.

43. Defendant, in discharging, suspending, demoting, threatening, disciplining and harassing Plaintiff in and from his employment, retaliated and discriminated against him because of complaints and concerns raised by him to Defendant.

44. The acts of Defendant in demoting, suspending, threatening, disciplining, harassing, discriminating, and retaliating against Plaintiff, including but not limited to the wrongful discharge of employment, adverse employment actions, denial of true and correct performance appraisals, demotion and termination of Plaintiff by Defendant violated the provisions of 31 U.S.C. § 3730(h).

45. Following Plaintiff's objection to Defendant's misappropriation and illegal retention of federal funds, Defendant has discriminated, suspended, demoted, threatened, disciplined, harassed and retaliated against Plaintiff for lawful conduct protected under the FCA.

46. Defendant has terminated, discharged, suspended, threatened, disciplined, harassed, and discriminated against Plaintiff in his employment in violation of 31 U.S.C. § 3730(h).

47. Defendant has discriminated and retaliated against Plaintiff for lawful and protected conduct in connection with his objection to and attempts to stop fraud, investigation of the fraud, potential testimony concerning, and assistance in an action filed or to be filed under the FCA, 31 U.S.C. § 3729 et seq.

48. Plaintiff is entitled to all relief necessary to make him whole, including reinstatement with the same seniority status that he would have had but for the discrimination and two times the amount of back pay.

49. Plaintiff, pursuant to 31 U.S.C. § 3730(h), is entitled to litigation costs and all reasonable attorneys' fees incurred in connection with this action.

50. Plaintiff's conduct, including but not limited to investigating Defendant's misappropriation and retention of federal funds, and also raising

complaints concerning same and bearing witness to violations of same, potential testimony concerning, potential initiation of and assistance in an action filed or potentially to be filed pertaining to the FCA, is all protected conduct under the FCA.

51. Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

52. Defendant discharged, terminated, demoted, suspended, threatened, disciplined and harassed Plaintiff from his employment and after his employment, and otherwise discriminated against him because of his protected conduct.

53. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, Plaintiff has lost all the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

54. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Plaintiff is entitled to all relief necessary to make him whole.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

   i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii.  Double back pay;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.  Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.   Reasonable attorney's fees plus costs;

vi.  Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

## COUNT III –VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT[4]

55. Plaintiff incorporates by reference Paragraphs 11-3, 6-8 and 15-25 of this Complaint as though fully set forth below.

56. The Plaintiff was an employee of the Defendant, a private company.

57. At all material times, the Plaintiff was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

> "An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;

---

[4] This Count is brought against Gem Remotes only.

13

> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

58. The Plaintiff did engage in statutorily protected activity by her objection to, and refusal to participate in, the Defendant's violations of law.

59. After engaging in statutorily protected activity, the Plaintiff suffered negative employment action – her constructive termination – which is a direct result of her statutorily protected activity.

60. The Plaintiff's constructive termination and her engaging in statutorily protected activity are causally related.

61. The Defendant knew that the Plaintiff was engaged in protected conduct as referenced herein and took adverse action against her because of it.

62. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, the Plaintiff has lost benefits and privileges of her employment and has been substantially and significantly injured in her career paths that was anticipated from her employment.

63. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, the Plaintiff is entitled to all relief necessary to make her whole.

**WHEREFORE,** Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(b) reinstatement of full fringe benefits and seniority rights,

(c) compensation for lost wages, benefits, and other remuneration,

(d) any other compensatory damages allowable at law,

(e) attorney's fees, court costs and expenses, and

(f) such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiffs demand a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: May 25, 2023

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com